75 P.3d 513 (2003)
150 Wash.2d 181
STATE of Washington, Respondent,
v.
Kevin M. SWENSON, Appellant.
No. 73192-6.
Supreme Court of Washington, En Banc.
Argued March 11, 2003.
Decided September 4, 2003.
*514 Richard Davies, Port Townsend, for Appellant.
Juelie Dalzell, Jefferson County Prosecutor, Jill Landes, Deputy, Michael Haas, Deputy, for Respondent.
FAIRHURST, J.
The Jefferson County Prosecuting Attorney filed an information charging Kevin Swenson with several crimes, but he was not brought for arraignment until nearly six months later because the Department of Corrections (DOC) had sent him to another county to address criminal charges in that county. One week after his arraignment, Swenson moved to dismiss the charges, claiming that the delay violated his time for trial rights. We find that the prosecuting attorney acted with good faith and due diligence in trying to bring Swenson to trial and, *515 therefore, Swenson's objection to his arraignment date was untimely.

FACTS
On September 7, 1999, the Jefferson County Prosecuting Attorney filed an information in Jefferson County Superior Court charging Kevin Swenson, an inmate incarcerated at Clallam Bay Corrections Center (CBCC), with first degree escape and taking a motor vehicle. On September 13, 1999, Lyn DeWitt, an employee of the prosecutor's office, sent a transport order to CBCC directing Swenson's transport to Jefferson County. CBCC called DeWitt and informed her that King County had already directed Swenson's transport and that he would be sent there first.
On September 14, 1999, DeWitt called the King County Jail and was advised that King County thought Swenson would first go to Jefferson County. DeWitt again called CBCC, but CBCC told DeWitt that Swenson would be transported to King County and that CBCC would notify her when he returned. On September 17, 1999, a Jefferson County Superior Court judge continued Swenson's arraignment "subject to call" because of his absence. DeWitt recalled having a conversation with someone from the King County Jail on a date after September 17, 1999, but she could not remember the exact date. On October 19, 1999, DeWitt called CBCC and was informed that Swenson had not returned. On January 25, 2000, DeWitt left a message with CBCC inquiring as to Swenson's availability. On January 26, 2000, CBCC told DeWitt that Swenson had not returned.
On February 29, 2000, DeWitt called CBCC and was informed Swenson was back in its custody. DeWitt immediately prepared an order to transport Swenson to Jefferson County. During the time Swenson was incarcerated in King County, DeWitt did not remember attempting to have Swenson transported directly from King County to Jefferson County.[1]
Swenson pleaded not guilty at his arraignment in Jefferson County Superior Court on March 9, 2000. At his arraignment, he did not make a time for trial objection. One week later, on March 16, 2000, Swenson filed a motion to dismiss alleging a violation of his time for trial right. The trial court denied the motion, determining that the State acted with good faith and due diligence in trying to bring Swenson before the court.
Swenson appealed the trial court's decision. The Court of Appeals affirmed the conviction, holding that Swenson waived his time for trial right when he failed to object to his arraignment date when he first appeared before the trial court. State v. Swenson, noted at 109 Wash.App. 1010 (2001), withdrawn, noted at 113 Wash.App. 1022, 2002 WL 31521200 (2002). Swenson appealed and this court remanded to the Court of Appeals for redetermination in light of State v. Huffmeyer, 145 Wash.2d 52, 32 P.3d 996 (2001). State v. Swenson, 146 Wash.2d 1002, 45 P.3d 534 (2002). In Huffmeyer, this court held that CrR 3.3(g)(2) does not exclude the period between the guilty plea and sentencing for calculation of a defendant's time for trial deadline. Huffmeyer, 145 Wash.2d at 64-65, 32 P.3d 996. On remand, the Court of Appeals determined that Huffmeyer was irrelevant, holding instead that Swenson had waived his objection to the arraignment date. State v. Swenson, noted at 113 Wash.App. 1022, 2002 WL 31521200 (2002). The court observed that, even if it ignored the timeliness of Swenson's objection, the trial court had correctly determined that the State had acted with good faith and due diligence in trying to bring Swenson before the court. Id. Swenson petitioned this court for review of the Court of Appeals' decision and we granted the petition.

ISSUE
Was Swenson's time for trial right violated by an arraignment date 184 days after the information was first filed in the court, when he was held in a different county jail and the prosecutor inquired as to his status numerous times?

*516 STANDARD OF REVIEW
The trial court determines as a finding of fact whether the State acted with good faith and due diligence in trying to bring an incarcerated defendant before the court. See State v. Slanaker, 58 Wash.App. 161, 165-66 & n. 3, 791 P.2d 575 (1990) (noting that the Supreme Court has stated that "`[d]iligence is a fact and not a conclusion'" (quoting State v. Fackrell, 44 Wash.2d 874, 880, 271 P.2d 679 (1954), and citing State v. O'Brien, 66 Wash. 219, 224, 119 P. 609 (1911))). The determination of whether a defendant's time for trial deadline has passed requires an application of court rules to particular facts (one of the facts being whether the State acted with good faith and due diligence) and is reviewed de novo. State v. Anderson, 102 Wash.App. 405, 410, 9 P.3d 840 (2000); State v. Carlyle, 84 Wash.App. 33, 35-36, 925 P.2d 635 (1996); State v. Tatum, 74 Wash.App. 81, 86, 871 P.2d 1123 (1994). If the court determines that the time for trial deadline has passed and the defendant's objection was properly raised, the court has no discretion in deciding whether to dismiss the charges. The charges "shall" be dismissed with prejudice. State v. Greenwood, 120 Wash.2d 585, 591, 845 P.2d 971 (1993).

ANALYSIS
A. Calculation of Time for Trial Deadline
A criminal charge not brought to trial within the time limits of CrR 3.3 shall be dismissed with prejudice. CrR 3.3(i). If a defendant is not in custody on the pending charge, the trial must be brought within 90 days of arraignment. CrR 3.3(c)(1). If the defendant is in custody on the pending charge, he must be arraigned within 14 days of the information being filed with the superior court. Id. The court rules do not address delay between the filing of an information and the arraignment of a defendant who is not in custody on the pending charge. Swenson was not in custody for his Jefferson County charges.
When a defendant makes a time for trial objection and there has been a delay between the information filing and the arraignment appearance, the court determines a "constructive" date of arraignment. State v. Striker, 87 Wash.2d 870, 871-72, 557 P.2d 847 (1976); see also Greenwood, 120 Wash.2d at 599, 845 P.2d 971.[2] Calculation of a constructive arraignment date is often referred to as the "Striker rule." A span of more than 45 days between the filing of the information and the actual arraignment date creates a prima facie case that the Striker rule applies, and a constructive arraignment date must be determined. Greenwood, 120 Wash.2d at 599, 845 P.2d 971 (citing State v. Carpenter, 94 Wash.2d 690, 694, 619 P.2d 697 (1980)). This constructive arraignment date is 14 days after the information is filed with the trial court. CrR 3.3; Striker, 87 Wash.2d at 875, 557 P.2d 847. Unless the time is adjusted or objection waived, the trial must begin within 104 days from the filing of an information (14 days from filing of charging document to arraignment plus 90 days for time for trial).
B. Adjusting the Time for Trial Deadline
The calculation of the time for trial deadline will be adjusted in certain circumstances. For example, the time for trial computation is tolled if the defendant is being held for "[p]reliminary proceedings and trial on another charge." CrR 3.3(g)(2). That exclusion ends upon a disposition occurring in the other case, such as the entering of a guilty plea. Huffmeyer, 145 Wash.2d at 61, 32 P.3d 996.
Here the Jefferson County prosecutor filed the information on September 7, 1999. The Jefferson County prosecutor requested transport for Swenson on September 14, 1999, just after King County had requested transport. On September 14, 1999, Swenson was sent to and held in King County for *517 preliminary proceedings on charges in that county; therefore, the time for trial clock was tolled.[3] On October 14, 1999, Swenson pleaded guilty to the charges in King County, thus re-commencing the time for trial clock for the Jefferson County charges. His constructive arraignment date would be 14 days later, on October 28, 1999. Consequently, his time for trial deadline would be January 26, 2000, or 90 days after his constructive arraignment date.
C. Time for Trial Objection
A defendant who objects to the date of arraignment because it is untimely must do so at the time of arraignment. CrR 3.3(e). Failure to object is considered a waiver and the actual date of arraignment is used to calculate the time for trial deadline. Id. However, if the objection is timely, the constructive arraignment date, 14 days from the filing of the information, is used to determine the time for trial deadline. CrR 3.3(c)(4), (e). The purpose of requiring an objection to the arraignment date at the actual arraignment is to notify the trial court of an alleged error and to allow the court to schedule a timely trial date, if possible. Greenwood, 120 Wash.2d at 606, 845 P.2d 971. If a defendant is arraigned after the time for trial has expired, he or she may later object because objection at the actual arraignment would not assist the court in remedying the error. Id.
Swenson was arraigned on the Jefferson County charges on March 9, 2000. He did not object to his arraignment date or file a motion to dismiss the charges based on time for trial violations until March 16, 2000. The Court of Appeals determined that, by not objecting to the arraignment date on March 9, 2000, Swenson waived any objection to the arraignment, pursuant to CrR 3.3(e). Swenson, 113 Wash.App. 1022, 2002 WL 31521200, at *2. Whether Swenson waived his objection to the arraignment date turns on whether the State acted with good faith and due diligence. If there was no good faith and due diligence, Swenson's time for trial deadline expired on January 26, 2000, and his objection was proper, even though made after his actual arraignment date. If there was good faith and due diligence, the trial deadline was extended and he needed to object at his arraignment.
D. Good Faith and Due Diligence
Periods during which the prosecutor acts with good faith and due diligence in trying to bring a defendant before the court are excluded from the time for trial calculation.[4]Greenwood, 120 Wash.2d at 604-05, 845 P.2d 971. Although the "good faith and due diligence" standard was adopted in interpreting a prior version of CrR 3.3, see State v. Peterson, 90 Wash.2d 423, 428, 585 P.2d 66 (1978), its validity continues because it is consistent with the purpose behind Striker, CrR 3.3, and the criminal rules as a whole. Greenwood, 120 Wash.2d at 600-01, 845 P.2d 971 (citing State v. Pacheco, 107 Wash.2d 59, 65, 726 P.2d 981 (1986)). The rule ensures that defendants are brought before the court in a timely manner, while allowing for unavoidable periods of delay that, if not taken into account, would put an extraordinary and unfair burden on the prosecution. Greenwood, 120 Wash.2d at 601, 845 P.2d 971 (quoting State v. Miffitt, 56 Wash.App. 786, 792, 785 P.2d 850 (1990)); see also Huffmeyer, 145 Wash.2d at 62-63, 32 P.3d 996.
In State v. Landey the first of the four cases consolidated in Greenwood, the Supreme Court determined that whether the prosecution acted with good faith and due diligence turned on the facts of each case. Greenwood, 120 Wash.2d at 601, 845 P.2d 971. In Landey, the State had attempted to notify the defendant of the charges against him by sending a letter and attempting to *518 telephone him. Id. at 601-02, 845 P.2d 971. The court held that the State had acted in a timely manner with the information it had regarding the defendant's whereabouts. Id. at 602, 845 P.2d 971. Because of this good faith and due diligence, the trial court used the actual arraignment date and did not need to establish a constructive arraignment date. Id. at 602-03, 845 P.2d 971.
Here, the trial court determined that the State acted with good faith and due diligence. The trial judge noted that Swenson was in the custody of DOC, and that DOC could not transport him to Jefferson County because it had a conflicting transport order from King County. The Jefferson County prosecutor had contacted King County and was told that Swenson would remain there until his matters were resolved. The trial judge also observed that the Jefferson County prosecutor routinely called DOC and King County to confirm Swenson's whereabouts so that he could be transported to Jefferson County as soon as possible. Once the prosecutor learned Swenson had returned to CBCC, a second transport order was issued and he was brought to Jefferson County for arraignment. The trial court stated that it was "confident that the State has demonstrated good faith and diligent effort to locate and obtain the Defendant for trial." Supplemental Clerk's Papers (SCP) at 4.
Swenson cites several cases to support his proposition that the prosecutor did not act with good faith and due diligence. Swenson notes that State v. Anderson, 121 Wash.2d 852, 863, 855 P.2d 671 (1993), adopted American Bar Association Standards for Criminal Justice (2d ed.1986) to help determine whether the State acts with good faith and due diligence. Those standards provide that, if a defendant is in custody in another county, the prosecutor must promptly "`undertake to obtain the presence of the prisoner for trial.'" Anderson, 121 Wash.2d at 863-64, 855 P.2d 671 (quoting STANDARDS std., 12-3.1(a)(i)). The record reflects that the Jefferson County prosecutor did just that.
Swenson also cites State v. Jones, 79 Wash.App. 7, 901 P.2d 1057 (1995), a case in which the State had mailed a certified letter to the defendant but it was returned as "unclaimed." Jones, 79 Wash.App. at 9, 901 P.2d 1057. The State made no further attempts to notify the defendant, despite the fact it had other information regarding the defendant's whereabouts. Id. The court determined that the State failed to exercise good faith and due diligence. Id. at 13-14, 901 P.2d 1057. Jones is inapposite because here the State knew precisely where Swenson was located and repeatedly checked on his availability for transport to Jefferson County. Swenson also cites State v. Bazan, 79 Wash.App. 723, 904 P.2d 1167 (1995). Like Jones, Bazan dealt with "unclaimed" certified letters and is readily distinguishable from this case. Id. at 726, 904 P.2d 1167.
Swenson also argues that the Court of Appeals erroneously placed upon him the burden of proving that the State failed to act with good faith and due diligence, rather than having the State prove it, by the statement: "Swenson never provided the trial court with information on when he believes he should have been available for transport." Swenson, 113 Wash.App. 1022, 2002 WL 31521200, at *2. The State has the burden of proving good faith and due diligence because it knows what it was doing during the relevant period. State v. King, 101 Wash.App. 318, 322, 2 P.3d 1012 (2000) (citing State v. Roman, 94 Wash.App. 211, 216, 972 P.2d 511 (1999)). Here, the prosecutor presented evidence of its good faith and due diligence by having DeWitt testify.
Swenson also argues there was not good faith and due diligence because there was no evidence that DeWitt tried to arrange with King County for Swenson to be transported directly from King County to Jefferson County. In Huffmeyer, the defendant was being held in the King County Jail when prosecutors filed an information in a Kitsap County court. Huffmeyer, 145 Wash.2d at 55, 32 P.3d 996. He was not arraigned on the Kitsap County charge until 121 days after pleading guilty on the King County charge. Id. The court held that the prosecutors failed to act with due diligence because they did nothing. "[P]rosecutors should have at least inquired as to when he would be available for trial in Kitsap County. Further, *519 prosecutors should have contacted King County to inquire as to the progression of Huffmeyer's trial and his availability after the guilty plea." Id. at 63, 32 P.3d 996. DeWitt regularly contacted King County and CBCC.
Swenson also argues that the State failed to meet its burden to show that it could not have transported Swenson directly from King County to Jefferson County. The trial judge in this case noted that there was an issue whether, once the prosecutor knew that DOC sent Swenson to King County, the prosecutor was obligated to do more than say, "let us know when he returns and we'll get him then." Report of Proceedings at 29-30. In his order denying the motion to dismiss, the trial judge noted "[t]he State had no ability to supercede the Department of Corrections requirements in relation to Mr. Swenson." SCP at 4. Likewise, the Court of Appeals noted that, unlike Huffmeyer, Swenson was in the formal custody of the DOC, who had sent him to King County subject to return. Swenson, 113 Wash.App. 1022, 2002 WL 31521200, at *2.[5]
There is substantial evidence supporting the trial court's conclusion that the State acted with good faith and due diligence in trying to procure Swenson's presence before the Jefferson County Superior Court. The State's good faith and due diligence extends the time for trial deadline. Greenwood, 120 Wash.2d at 604-05, 845 P.2d 971; Anderson, 102 Wash.App. at 411, 9 P.3d 840 (State's due diligence extended time for trial deadline, making defendant's objection to arraignment after her actual arraignment untimely under CrR 3.3(e)). Swenson's time for trial deadline changed to 90 days after his actual arraignment. Because there was time remaining before the time for trial deadline passed, Swenson's failure to object at his actual arraignment constituted a waiver of that objection. CrR 3.3(e). The Court of Appeals correctly determined that Swenson waived his objection to the arraignment date under CrR 3.3(e).

CONCLUSION
We are satisfied that the trial court correctly determined that the State acted with good faith and due diligence in bringing Swenson before the court. The State's actions extended Swenson's time for trial deadline. We affirm the Court of Appeals because Swenson waived his objection to the arraignment date by not raising it at the time he was arraigned.
ALEXANDER, C.J., and JOHNSON, MADSEN, IRELAND, BRIDGE, OWENS, and CHAMBERS, JJ., concur.
SANDERS, J. (dissenting).
I agree with the majority that "[w]hether Swenson waived his objection to the arraignment date turns on whether the state acted with good faith and due diligence. If there was no good faith and due diligence, Swenson's time for trial deadline expired on January 26, 2000, and his objection was proper." Majority at 189, 765 P.3d at 517. But I disagree that the prosecution here acted with the requisite good faith and due diligence.
For purposes of calculating a timely trial date when a defendant is in custody of another county, the period between the entry of the guilty plea and sentence in the other county is not excluded for speedy trial purposes unless the State acted in good faith and due diligence. State v. Huffmeyer, 145 Wash.2d 52, 62, 32 P.3d 996 (2001). Swenson entered a guilty plea in King County on October 14, 1999 and remained there in jail until he was sentenced on January 28, 2000. Majority at 515 n. 1. He was then returned to the Clallam Bay Correctional Center (CBCC) on February 2, 2000. Clerk's Papers at 19. Unless the prosecuting attorney for Jefferson County acted in good faith and due diligence to bring Swenson to trial, that time must be included to properly calculate the speedy trial deadline and Swenson's charges must be dismissed with prejudice.
*520 "The prosecution [cannot] be deemed to have exercised good faith and due diligence if the defendant's whereabouts were known to the prosecution, and reasonable efforts were not taken to obtain his or her presence before the court." State v. Greenwood, 120 Wash.2d 585, 600, 845 P.2d 971 (1993) (emphasis added). On September 14, 1999, one week after the Jefferson County Prosecutor's Office filed its information against Swenson in Jefferson County, it discovered he was in King County custody facing unrelated charges. Majority at 515. Yet it made no effort to determine when Swenson entered a guilty plea at King County or whether Swenson would be available for transfer to Jefferson County after the entry of judgment. See id., at 515. The only efforts the prosecutor's office made in this period were to place two calls to King County in September 1999 and two calls to CBCC on October 19, 1999 and January 25, 2000. Id. at 515. These actions represent minimal efforts to verify Swenson's location but not to facilitate his transfer.
The cases upon which majority relies, Huffmeyer and State v. Landey (one of four consolidated cases in Greenwood, 120 Wash.2d 585, 845 P.2d 971), do not support the majority's conclusion that there was no speedy trial violation under these facts.
Landey is inapposite because the defendant in that case was not in state custody. 120 Wash.2d at 601-02, 845 P.2d 971. The issue there was the level of care required to locate defendants "who have failed to provide the prosecution with accurate information of their whereabouts." Id. at 602, 845 P.2d 971. Landey concluded: when the prosecutor's office sends a letter to the defendant's last known address, attempts to telephone him or her at the number the defendant had initially given to police, and "to find him [or her] through the use of reverse directories," and through "inquiries to the employment security and welfare offices[,] .... these actions constitute due diligence." Id. at 601-02, 845 P.2d 971. But here the issue was not merely to locate Swenson, but to transfer him to Jefferson County to stand trial. After discovering Swenson's whereabouts on September 14, 1999, Jefferson County made no effort to secure his transfer until February 29, 2000. Majority at 185, 75 P.3d at 515.
Although Huffmeyer is factually similar, it supports a different result. There, three days after the State filed an information in Kitsap County against the defendant, it discovered he was in the King County jail. 145 Wash.2d at 55, 32 P.3d 996. But defendant was not arraigned in Kitsap County until August 26, 1998, 121 days after he pleaded guilty to the King County charges. Id.
The trial court granted Huffmeyer's motion to dismiss because he had not been brought before the court within the 104-day speedy trial limit under CrR 3.3(c)(1) and State v. Striker, 87 Wash.2d 870, 557 P.2d 847 (1976) and because the State had not acted with good faith and due diligence. Huffmeyer, 145 Wash.2d at 55-56, 32 P.3d 996. We affirmed the trial court. Id. at 54-55, 32 P.3d 996. As to the good faith and due diligence issue we explained:
when informed of his location, prosecutors should have at least inquired as to when he would be available for trial in Kitsap County. Further, prosecutors should have contacted King County to inquire as to the progression of Huffmeyer's trial and his availability after the guilty plea. Instead they allowed him to remain in the King County jail for 121 days before bringing him to trial.
Id. at 63, 32 P.3d 996.
As indicated by the terms "at least," these are minimal requirements. But the record is clear: Jefferson County did not inquire when Swenson would be available for trial, nor did it contact King County to inquire as to the schedule of his trial or his availability after the guilty plea. Instead it allowed him to remain in the King County jail from October 14, 1999 until February 2, 2000 when he was transferred to CBCC and then left him in CBCC until February 29, 2000 when it ordered a transfer from that facility. See majority at 515. The majority's conclusion that the prosecuting attorney for Jefferson County "regularly contacted King County and CBCC," majority at 518, belies a record indicating only minimal communication with King County and CBCC. See majority at 515. Moreover, the number of communications is *521 not the issue, but rather the effort, if any, to facilitate a timely transfer to Jefferson County.
"[P]ast experience has shown that unless a strict rule is applied, the right to a speedy trial as well as the integrity of the judicial process, cannot be effectively preserved." Striker, 87 Wash.2d at 877, 557 P.2d 847. The majority's willingness to excuse the prosecution's unwarranted delay in bringing Swenson to trial threatens both.
I therefore respectfully dissent.
NOTES
[1] On October 14, 1999, Swenson pleaded guilty to charges in King County, was sentenced on January 28, 2000, and returned to CBCC on February 2, 2000.
[2] A defendant must also have been "amenable to process" in order to make a time for trial objection. Greenwood, 120 Wash.2d at 591, 845 P.2d 971. If a prosecutor is aware that the defendant is in the custody of the Department of Corrections, the defendant is amenable to process. Id. at 604-05, 845 P.2d 971; see also Huffmeyer, 145 Wash.2d at 62 n. 4, 32 P.3d 996. Swenson was amenable to process.
[3] The time for trial clock would have run from September 7, 1999 (the filing of the Jefferson County information) until September 14, 1999 (transport to King County). However, neither party raised this issue. Consideration of those seven days would not change the result of this case.
[4] The time for trial violation is also excused if the delay was caused by any fault or connivance on the part of the defendant. Greenwood, 120 Wash.2d at 600, 845 P.2d 971 (citing Striker, 87 Wash.2d at 872, 557 P.2d 847). In this case, the delay was not caused by the defendant.
[5] RCW 72.68.020(1) provides for the transportation of prisoners in state custody. That statute mandates that the secretary "shall" transport prisoners: (a) to and between state facilities and (b) from county jails to state facilities and from state facilities to county jails. Nowhere does it state that the secretary shall transport prisoners between county facilities.